RUSSELL S. POWELL, APPELLANT, v. TRENMORE CONE, APPELLEE.

FILED DECEMBER 19, 1916. No. 18475.

1. Landlord and Tenant: LEASE: CONSTRUCTION: RENEWAL. A five-year lease giving lessee an option to renew it for a "like term or terms of years," and providing that such option shall be exercised within five years from date, entitles lessee to one renewal.

2. ———: ———: ———. Though a contract granting the right to remove sand and gravel from leased premises uses the term "lease and demise" in the granting clause, subsequent provisions may show that it was a lease for that purpose only.

APPEAL from the district court for Merrick county: CONRAD HOLLENBECK, JUDGE. *Reversed, with directions.*

*Elmer E. Ross* and *Martin & Bockes*, for appellant.

*Burkett, Wilson & Brown, F. A. Bald* and *Albert & Wagner, contra.*

ROSE, J.

In a petition in equity plaintiff prays for the reformation of a written instrument, for its cancelation when reformed, and for an accounting by defendant. Under the contract in controversy defendant acquired from plaintiff the right to remove sand from a 40-acre tract of land in an abandoned bed of the Platte river near Central City for the compensation of 25 cents a car-load. Defendant by pleading and proof resisted reformation. The trial court declined to reform the written instrument and dismissed the suit. Plaintiff has appealed.

The writing signed by the parties is in part as follows:

"This lease entered into this twenty-fourth day of February, 1911, between R. S. Powell, party of the first part, and T. Cone, party of the second part, is as follows: Witnesseth, for and in consideration of one dollar paid to party of the first part by the party of the second part and in consideration of the covenants hereinafter set forth by the party of the second part, or assigns, the party of the first part does by these presents lease and demise to the party of the second part the following tract of land situated in Merrick county, Nebraska, containing 40 acres, more or less, lying immediately north of the present north bank of the Platte river and immediately east of the present right of way of the Chicago, Burlington & Quincy Railroad, where said railroad crosses the Platte river, and being a plat of land that was a part of the old river bed of the Platte river, to have and to hold the same to the said party of the second part, without any liability or obligation on the part of R. S.

Powell or assigns of making any improvements of any kind thereon for the benefit of the party of the second part upon or about said premises, for the term of five years from this date, to February 24, 1916: Provided that R. S. Powell reserves the right to stock the waters thereon with fish, to use and improve said premises as a pleasure resort, either private or public, and to pasture the same, so long as such occupancy by R. S. Powell shall not interfere unreasonably with the occupancy of said premises by the party of the second part in handling sand and gravel thereon and the removal of them therefrom.

"It is further agreed between the parties hereto that the party of the second part shall have the right to construct railroad tracks, and erect such derricks and buildings upon these premises as may be necessary in handling sand, gravel, etc., and to removal therefrom, and party of the second part shall have the right to remove such improvements during the life of, or at the expiration of, this lease.

"It is further agreed that the party of the first part gives to the party of the second part the option to renew this lease under like conditions for a like term or terms of years, but the party of the second part shall exercise such option within five years from date hereof.

"The party of the second part, in consideration of leasing the premises as herein set forth, covenants and agrees with the party of the first part to pay to the party of the first part, or assigns, the sum of twenty-five (25) cents per car-load for each and every car-load of material taken from said premises during the life of this lease or the renewal thereof."

One provision which plaintiff seeks to reform is as follows:

"It is further agreed that the party of the first part gives to the party of the second part the option to renew this lease under like conditions for a like term or terms

of years, but the party of the second part shall exercise such option within five years from date hereof."

Plaintiff's contention seems to be that the term of defendant, under the agreement in fact made, was the definite period of five years, with the privilege of extending it five years more, "if entirely satisfactory to both parties." According to the undisputed evidence, a renewal option was discussed before the instrument was executed. The quantity of sand on the premises owned by plaintiff and the magnitude of the enterprise contemplated by defendant made the privilege of renewal an important factor. Plaintiff admitted on the witness-stand that defendant in his negotiations had mentioned the subject of renewals. The option, in the form appearing in the written instrument, was read to plaintiff before his signature was attached. On the question of fraud or mistake the proof does not warrant a reformation authorizing plaintiff, if dissatisfied, to oust defendant after an occupancy of five years. The parties made provision for a renewal option "under like conditions for a like term or terms of years." The privilege of renewal for the definite period of a "like term" of five years is not defeated by the indefinite phrase "or terms of years." The entire grant for a "like term or terms" is qualified by the clause, "but the party of the second part shall exercise such option within five years from the date hereof." Taken as a whole, therefore, the agreement for a renewal grants one option only, to be exercised within five years from the date of the contract. This construction requires the parties to respect the right of renewal for the five-year term specifically described, but does not sanction indefinite renewals without limit. *Winslow v. Baltimore & O. R. Co.*, 188 U. S. 646; *Tischner v. Rutledge,* 35 Wash. 285; *Drake v. Board of Education,* 208 Mo. 540; *King v. Wilson,* 98 Va. 259; *Syms v. Mayor,* 105 N. Y. 153.

The ice on the ponds created by the excavations made in removing sand is also the subject of controversy,

both parties claiming it. In this respect defendant seems to be in the wrong. The contract does not specifically mention ice, and nothing is said about compensating plaintiff for it. While the words "lease and demise" are used in the granting part of the contract in connection with the 40-acre tract of land described, the grant itself is limited by provisos, reservations and other provisions indicating that the parties meant to execute a lease for the removal of sand and gravel and for the occupancy and use necessary for that purpose. Plaintiff reserved the right to stock the waters with fish and to use and improve the premises for a pleasure resort. These reservations, in connection with the instrument as a whole, include control of both water and ice for those purposes. Defendant drew the instrument and protected himself from the reservations mentioned by forbidding unreasonable interference with his right to handle and transport sand and gravel, but inserted nothing in regard to ice. The conclusion is that he is not entitled to it. The preponderance of the oral evidence is in harmony with this interpretation of the contract.

Defendant constructed on the premises and operated a plant for the manufacture of cement products, and this enterprise is also a subject of controversy. For reasons already suggested, the use of plaintiff's land for such a purpose is not authorized by the lease. Defendant did not obtain oral permission to operate a manufacturing plant, and the evidence will not justify a finding that plaintiff's right to enjoin him from doing so is defeated by estoppel. On this issue, however, plaintiff did not prove substantial damages and is entitled to nominal damages only. On the issue as to waste in defendant's use of the premises for the purpose of removing sand and gravel, plaintiff, under the evidence, is not entitled to any relief.

The judgment is therefore reversed and the cause is remanded to the district court, with instructions to enter a decree conforming to the views herein expressed.

REVERSED.