## Richmond

WARDS CO., INCORPORATED v. LEWIS & DOBROW, INC.

April 27, 1970.

Record No. 7129.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Howard W. Dobbins (E. Milton Farley, III; Wallerstein, Goode, Dobbins & Shuford; Hunton, Williams, Gay, Powell & Gibson,* on brief), for plaintiff in error.

*Eli S. Chovitz (Albert C. Selkin; Steingold, Steingold & Chovitz,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Appellee, Lewis & Dobrow, Inc., an advertising agency, brought

an action against Wards Co., Incorporated on a contract for advertising services. The trial court, sitting without a jury, found that there was a contract for one year beginning January 1, 1966 which was breached by Wards. Judgment was entered for Lewis & Dobrow for damages in the sum of $12,321.21. Included in the amount of the judgment was $2321.21, for fees and charges through February, 1966, stipulated by Wards to be payable. We granted a writ of error.

Wards contends that the court erred in holding that the contract was not terminable at will and, secondarily, in determining the measure of damages.

Lewis & Dobrow, of which Lawrence Dobrow was president at the time of trial, is located in Washington, D. C., where Samuel S. Wurtzel, president of Wards, had known Mr. Dobrow for some years.

In the summer of 1965 Wards acquired a department store in Richmond which it renamed The Carousel. Shortly thereafter Wurtzel communicated with Dobrow about providing advertising and promotional services for the grand opening of the store in November. Negotiations between the parties were carried on by correspondence, conferences and telephone conversations.

Lewis & Dobrow rely upon the finding of the trial court that their proposal to Wards dated August 17, 1965, and Wards' letter to them dated November 18, 1965, constituted the offer and unqualified acceptance of a one year contract. The only additional evidence consisted of other letters between the parties and the testimony of Dobrow and Wurtzel heard *ore tenus* by the lower court.

After a preliminary conference, in which a program for the opening and a continuing program were discussed, Dobrow submitted to Wurtzel an "Advertising Outline for the Carousel, Richmond, Va." dated August 17, 1965. This unsigned writing, referred to by both parties as a "proposal", consisted of two parts: first, "Preopening and Opening", and second, "Continuing Promotion". The "total estimated cost" or budget for "Preopening and Opening" was $44,-250, including an agency fee of $7,500 to Lewis & Dobrow for their creative skills. Under the "Preopening and Opening" part of the proposal it was specified that commissions received from advertising media, i.e., 15% of radio, television, bus and poster, but not newspaper, advertising cost, would be credited on the agency fee.

The record shows that Wards rejected the August 17 proposal as unreasonably expensive. Dobrow then submitted in a letter (not

in evidence) a less expensive program of preopening, opening and postopening advertising ending two weeks after the opening, which Wurtzel approved. The store opened on November 11 and the bill for advertising costs and fees through November 25, in excess of estimates, was nevertheless accepted and paid. So the first part of the August 17 proposal was modified and superseded by a consummated agreement with which we are not concerned.

Wurtzel was not satisfied with the "Continuing Promotion" part of the proposal, which recommended that $57,700 of the annual advertising budget of The Carousel be allocated under the following headings:

|  |  |  |
|---|---|---|
| I. | Newspaper Advertising | |
| | 25 full page insertions | $15,700 |
| II. | Radio and Television | 12,000 |
| III. | Outdoor and Transportation Advertising | 3,000 |
| IV. | Art and Production | 12,500 |
| "V. | Agency fee | |
| | As its fee, the agency will require | |
| | $1000.00 per month | 12,000" |
| VI. | Reserve | 2,500 |
| | | $57,700 |

At Wurtzel's request an alternative program was submitted by letter from Dobrow dated November 17, 1965, proposing drastic "adjustments" based upon reduced budget figures supplied by Wurtzel. This letter recommended the following allocations:

|  |  |  |
|---|---|---|
| 1. | Miscellaneous | $1,000 |
| 2. | 12 full page engravings | 1,000 |
| 3. | Buses and posters | 2,500 |
| 4. | Updating radio commercials | 1,500 |
| "5. | $10,000 budget be established for the advertising agency fee. This sum to be paid monthly in equal amounts commencing January, 1966." | 10,000 |
| 6. | Art and production | 6,000 |
| 7. | Radio | 10,000 |

The figures aggregate $32,000. Exclusive of agency fees the difference in a year between this proposal and that of August 17 is $23,700. The November 17 proposal provided that Lewis & Dobrow would retain commissions received from advertising media.

Upon receipt of this proposal on November 18 Wurtzel rejected it by telephone. To confirm the telephone conversation he sent the following letter to Dobrow:

(Letterhead omitted)

"November 18, 1965

Mr. Lawrence Dobrow
Lewis & Dobrow, Inc.
5100 Wisconsin Aven., N. W.
Washington, D. C. 20016

Dear Larry:

Following our telephone conversation today, I am confirming the arrangement we have.

First we are disregarding the proposal in your letter of November 17th and proceeding on the basis of the proposal you made to us on August 17th which provides for an agency fee to you of $1000. per month. It is understood that all commissions will be refunded to us.

While your August 17th proposal calls for a plan of 25 full page color insertions throughout the year, we may not necessarily follow this nor any of the other items for radio, television, etc. It is our understanding that you will spearhead and plan our advertising program to co-ordinate with our own advertising department.

Since I am leaving tomorrow, I will not have time to work out the precise program but I suggest that you hold a meeting with Bruce Prince and Marty Ross at the earliest possible date so that our arrangement will begin operating in full force on January 1st.

During your visit here this week Bruce Prince outlined to you the part that he felt your agency should play in the advertising for The Carousel and I believe that this is how you understand it.

I am real pleased to know that you will be handling the Carousel program. Best regards.

Sincerely yours,
Wards Co., Incorporated
/s/ Sam
S. S. Wurtzel
President

cc: M. Ross, B. Prince"

Advertising services were provided by Lewis & Dobrow during January, 1966, until Wurtzel wrote Dobrow on January 26 "that we find it necessary to cancel the arrangement we have for advertising".

Wards contends that Wurtzel's November 18 letter made "certain material changes" in the Lewis & Dobrow August 17 proposal and was therefore a counteroffer. We agree.

The August 17 proposal nowhere provides that acceptance will bind the parties for one year. No term is specified, nor is any beginning or ending date set forth although, as the trial court noted, the period of one year is referred to several times. If its provisions are ambiguous they should be interpreted against Lewis & Dobrow who wrote the proposal. *Hutchison* v. *King*, 206 Va. 619, 624, 145 S. E. 2d 216, 220 (1965).

Regardless of the intent of the August 17 proposal we do not construe the Wurtzel letter of November 18 to be an unqualified acceptance and we are not bound by the trial court's interpretation to the contrary. *Hutchison* v. *King, supra,* 206 Va. 619, 625, 145 S. E. 2d 216, 221; *Raney* v. *Barnes Lumber Corp.,* 195 Va. 956, 81 S. E. 2d 578 (1954).

Even if the August 17 proposal was an offer to provide services for a term of one year the November 18 letter was a counteroffer to employ the agency for an indeterminate period at a fee of $1000 per month, less credits for commissions from advertising media. Otherwise, there was no logical reason for Wurtzel to write the letter. If he was committing Wards to a one year agency agreement he would have saved money by accepting the November 17 offer providing for a $10,000 agency fee payable $833.33 per month, even without credit for commissions.

The August 17 "Continuing Promotion" proposal was silent as to commissions on media advertising which would aggregate about $2000 on the recommended allocations. Wurtzel specifically provided in his November 18 letter that Wards would receive credit for these commissions.

The third paragraph of the November 18 letter removed any doubt that it was not an unqualified acceptance. This eliminated any requirement that Wards use either the types or amounts of advertising proposed in the August 17 writing.

The evidence is uncontradicted that Wurtzel sought a continuing relationship with Lewis & Dobrow under which the agency would, for a monthly fee, furnish a central advertising theme and one ad-

vertisement each month. Dobrow's November 17 letter complied in part by providing for 12 full page engravings and eliminating all other newspaper advertising, but it also provided for an agency fee for the entire year 1966. Wurtzel promptly made his counterproposal of an agency fee of $1000 per month, less media commissions. All other details, including the sum, if any, to be budgeted for each kind of advertising, were left for future determination.

The November 18 letter, having not only materially changed, but in effect eviscerated the August 17 proposal, was a counteroffer rather than an acceptance. *Virginia Hot Springs Co.* v. *Harrison*, 93 Va. 569, 576, 25 S. E. 888, 891 (1896). By proceeding to furnish services pursuant to the November 18 letter Lewis & Dobrow tacitly agreed to the counteroffer of an agency fee of $1000 per month beginning January, 1966, and continuing indefinitely.

■ We have long held that a contract to furnish services or a contract of employment for an indefinite period is, upon reasonable notice, terminable at will by either party. *Stonega Coal and Coke Co.* v. *Louisville & N.R.R.*, 106 Va. 223, 55 S.E. 551 (1906); *Title Ins. Co.* v. *Howell*, 158 Va. 713, 718, 164 S.E. 387, 389 (1932); *Town of Vinton* v. *City of Roanoke*, 195 Va. 881, 895, 80 S.E.2d 608, 616 (1954); *Plaskitt* v. *Black Diamond Trailer Co.*, 209 Va. 460, 164 S.E.2d 645 (1968).

Here, the contract, being one for an indefinite period with compensation payable monthly, was terminable at will upon reasonable notice. Since Wards has agreed to pay Lewis & Dobrow for the month following termination, the work for which had been performed, there was reasonable notice of termination. Indeed, it is not contended that the notice of termination was not reasonable.

Construing the contract as we do it is not necessary to consider the issue of damages.

The judgment of the lower court is reversed and final judgment is here entered in favor of the appellee in the amount of $2,321.21, with 6% interest thereon from April 1, 1966 until paid.

*Reversed and final judgment.*