George T. McLEAN and Jean M. Davis, Trustees for Jamie Davis, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 7083–N.

United States District Court, E. D. Virginia, Norfolk Division.

Aug. 6, 1970.

Kaufman, Oberndorfer & Spainhour, Conrad M. Shumadine, Norfolk, Va., for plaintiffs.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for defendant.

OPINION

KELLAM, District Judge.

Plaintiffs seek judgment declaring and adjudicating their rights under a

lease made May 1, 1952 by their predecessors in title with Commissioned Officers' Beach Club, Virginia Beach, Virginia. The facts alleged in the original and amended motions are admitted. The parties agree there is no evidence which they can present which will assist the Court in deciding the issue. Each of the parties has moved for summary judgment.

Briefly stated, Richard J. Davis and Jean M. Davis, husband and wife, leased ten vacant lots in Virginia Beach to the aforesaid officers' club, to be "used exclusively as a parking area and/or for other purposes in connection with the management and operation" of the club, "for the term beginning 1 May 1952 and ending with 1 May 1953." The lease provided that lessee "shall not assign this lease in any event," and was not permitted to "sublet the premises except to a desirable tenant, and for a similar purpose," nor was lessee to permit the use of the premises "by anyone" other than the lessee, its sublessee and agents. Lessee advised it would like use of the lot for more than one year, but that it did not have authority to enter into a lease for a greater period of time than a year. To avoid renegotiating the lease each year, the following language was incorporated:

4. This lease may, at the option of the Lessee, be renewed from year to year at a rental of THREE THOUSAND ($3,000.00) DOLLARS per annum and otherwise upon the terms and conditions herein specified, provided notice be given in writing to the Lessor at lease thirty (30) days before this lease or any renewal thereof would otherwise expire.

In addition, the lessee reserved "the right to terminate this lease at any time upon giving thirty (30) days written notice."

Defendant says the lease creates a right to perpetual renewals. Plaintiffs say the lease gives defendant only a right to renew for a reasonable time; that the language is not sufficient to indicate an intent to grant perpetuity; and that since it is a lease for an indefinite period it is terminable on reasonable notice after a reasonable period of time.

The lease is not by deed, is not under seal, is short, covers vacant property, extends for one year, with provision for renewal at the exclusive option of lessee, and likewise with the right to lessee to terminate upon 30 days notice. The renewals are at the same rental as the original period, with no escalation clause, and there is no stated limit for renewals. Nowhere in the lease does the language "perpetual," "forever," "for all times," "in perpetuity," "successive," "endless periods," "continuous," "everlasting," or any similar words of description of the terms of the lease appear. The use of the premises by lessee is restricted to that of a parking area and purposes connected with operation of a beach club. The lease may not be assigned "in any event," and any subletting is limited to a "desirable tenant, and for a similar purpose," nor may lessee permit others to use the premises. Lessee has the right to attach fixtures, etc., to the premises which shall remain the property of and may be removed by lessee prior to termination of the lease. There is nothing about the authorized or permitted use of the premises, the term of occupancy, the rental, the rights granted or language used to suggest the parties intended the lease to continue in perpetuity. To the contrary, the fact the lease extended for only one year, and even then could have been terminated upon thirty days notice, the right to terminate any renewal on thirty days notice, the restrictions on use, assignment or sub-letting, the lack of an escalation clause, the right to remove any fixtures placed on the premises, the lease not being under seal, and the fact that the lessee could only enter into a lease for one year, all accent the lack of an intent to create a perpetual lease. The lessee had the right to place fixtures or structures on the premises which would increase the amount of real estate taxes

chargeable only to the title holder of the property. Under such circumstances, the taxes might well exceed the amount of rental.

The lack of covenants, undertakings, conditions and provisions usually contained in a long term or perpetual lease are missing here. The provisions of the lease are those usually contained in short term leases. The restriction against use except as a parking area and/or purposes connected with the operation of a beach club, and restrictions on assignment "in any event" and subletting "except to a desirable tenant," the inability of lessee to enter into a lease for more than one year, together with the right to terminate on 30 days notice, are not the conditions usually found in a perpetual or long term lease. Construed as a perpetual lease, it could tie up the property forever for one particular and narrow use, regardless of the potential of the property, the change of the area, the economic changes. The option to renew is limited to the named lessee, for the lease provides that the lease may "at the option of the Lessee," be renewed. The right does not extend to its successors, assigns, sub-lessees, or any other person. In fact, lessee may not assign the lease. With such limitations, it could hardly be construed as a perpetual lease.

### I.

■ Perpetual leases are not favored in the law, nor are covenants for continued renewals which tend to create a perpetuity. The intent to create a perpetual lease must appear in clear and unequivocal language, so plain as to leave no doubt it was the intention and purpose of the parties so to do. It should not be left to inference. Vol. 50 Am.Jur.2d, page 56, § 1171, subj. Landlord and Tenant [Vol. 32 Am.Jur. page 813, etc.] ; Vol. 51C, C.J.S. Landlord and Tenant § 61b, pages 188–189; Anno. 31 A.L.R.2d 623, Perpetual Renewal; Winslow v. B. & O. R. Co., 188 U.S. 646, 23 S.Ct. 443, 47 L.Ed. 635; Geyer v. Lietzan, 230 Ind. 404, 103 N.E.2d 199, 31 A.

L.R.2d 601; Tischner v. Rutledge, 35 Wash. 285, 77 P. 388; Hallock v. Kintzler, 142 Ohio St. 287, 51 N.E.2d 905; cases collected in Annotation in 31 A.L. R.2d, page 623.

■ A perpetuity will not be regarded as created from an ordinary covenant to renew. "There must be some peculiar and plain language before it will be assumed that the parties intended to create it." Winslow v. B. & O. R. Co., 188 U.S. 646, 655, 23 S.Ct. 443, 446.

Much has been written concerning perpetual leases. The issue here is not whether perpetual leases are valid, but whether the lease in question qualifies as a valid perpetual lease. The following authorities have this to say:

(a) Vol. 50 Am.Jur.2d, page 56, § 1171, subj. Landlord and Tenant:

> The law does not favor perpetual leases; the intention to create one must appear in clear and unequivocal language, and accordingly, a lease will not be construed to create a right to perpetual renewal unless the language employed indicates clearly and unambiguously that it was the intention and purpose of the parties to do so. So, it has been said that leases which may have been intended to be renewable in perpetuity will nevertheless be construed as importing but one renewal if there is any uncertainty in that regard. That a lease stipulates for an increased rental "upon the 3rd or any subsequent renewal" does not require an interpretation of the lessee's option to renewal as granting the right to a second and third renewal. A renewal provision of a lease which, although not conferring the right to perpetual renewals, grants the right to more than one, without specifying the number, is so indefinite and uncertain as to be unenforceable.

> \* \* \* \* \* \*

> In some cases in which the leases construed provided generally for year-to-year renewals, without other qualifying language, it has been held or recognized that the lessee was enti-

tled to only one renewal. The employment in leases of such terms as "successively," "every succeeding term," or other language of similar import, does not necessarily imply a covenant for perpetual renewals, especially when such terms, when considered with the context of the lease and the acts of, and circumstances surrounding, the parties, indicate a contrary intention. Moreover, mere use in the original lease, with respect to renewal, of the words "from year to year," "yearly," or words of substantially the same meaning, does not, in and of itself, obligate the lessor to renew the lease perpetually, particularly where such provision is considered together with others tending to show that such was not the intent of the parties.

(b) Vol. 51C C.J.S. Landlord and Tenant § 61b, pages 188–189:

Perpetual leases are not favored in the law, nor are covenants for continued renewals tending to create a perpetuity, and the rule of construction is well settled that a covenant for renewal or for an additional term should not be held to create a right to repeated grants in perpetuity, unless by plain and unambiguous terms the parties have expressed such intention. In this connection the use of words "successive renewals" in a renewal provision of a lease does not mean that renewals are available to the lessee forever and without end, since the word successive imports concatenation, and does not define duration.

(c) Annotation in 31 A.L.R.2d 623, § 9:

Covenants for continued renewals are not favored, inasmuch as the law does not favor perpetual leases; hence, the courts will not construe a lease as conferring a right to perpetual renewals, unless it clearly so provides in unequivocal language so plain as to leave no doubt that such was the intention and purpose of the parties.

The author here cites cases from Indiana, Iowa, Kentucky, Michigan, Missis-sippi, Missouri, New York, Ohio, Pennsylvania, Virginia, Washington, West Virginia and Wisconsin.

(d) Geyer v. Lietzan, 230 Ind. 404, 103 N.E.2d 199, 31 A.L.R.2d 601:

It seems proper to first consider the assertion that this lease conferred upon the appellant the right to perpetual renewals. The law does not favor perpetual leases. A lease will not be construed as conferring a right to perpetual renewals unless it clearly so provides, in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. A lease will, if possible, be so construed as to avoid a perpetuity by renewal. 32 Am.Jur., Landlord and Tenant, § 968, p. 813; 51 C.J.S. Landlord and Tenant § 61, p. 606; Vokins v. McGaughey, 206 Ky. 42, 266 S.W. 907, 39 A.L.R. 275, Annotation 279; Brush v. Beecher, 1896, 110 Mich. 597, 68 N.W. 420, Tischner v. Rutledge, 1904, 35 Wash. 285, 77 P. 388; Diffenderfer v. Bd. of President, etc., St. Louis Public Schools, 1894, 120 Mo. 447, 25 S.W. 542.

(e) Tischner v. Rutledge, 35 Wash. 285, 77 P. 388:

* * * the authorities are uniform on the propositions that the law does not favor perpetual leases of the character claimed for this one, and that the intention to create such a lease must be expressed in clear and unequivocal language, and not be left to mere inference. Courts will also, whenever it is possible without doing violence to the plain meaning of words, so construe the language used as to avoid a perpetuity by renewal.

* * * * * *

It does not employ the terms "in perpetuity," "forever," or words of similar import, such as one would expect to find in instruments granting perpetual rights. Moreover, the phrase used which is thought to create the perpetual right is of itself likely to conceal its real meaning. When we speak of a thing as continuing from

year to year, it is only on second thought that we conclude it means forever. This we do not think is the direct and unequivocal language necessary to create a lease of the character contended for.

## II.

The lease in issue extends for one year with option to the lessee named "to renew from year to year," provided written notice be given to lessor at least 30 days before the lease or any renewal would otherwise expire. There is no limitation on the number of renewals, so that if defendant's construction of the lease is accepted, it could continue forever. That is, no definite term for the continuance of the lease is fixed. It goes on and on. The lessee may terminate it at any time upon thirty days notice, but lessor is bound forever.

■ A contract or lease for an indefinite period is terminable at will, upon reasonable notice, by either party. Stonega Coal & Coke Co. v. Louisville and Nashville R. R. Co., 106 Va. 223, 55 S.E. 551; Town of Vinton v. City of Roanoke, 195 Va. 881, 80 S.E.2d 608; Wards Co., Inc. v. Lewis and Dobrow, Inc., 210 Va. 751, 173 S.E.2d 861 (1970). In the early case of Cowan v. Radford Iron Co., 83 Va. 547, 3 S.E. 120, Cowan made a mining lease agreement with the Iron Company for mining ore with the right to remove any machinery, buildings, etc., placed thereon. No time was specified for the work to end and the rights to expire. The Court said:

If one party may, then, terminate the lease *at any time*, it may will it; if this estate is at the will of one of the parties, it is equally at the will of the other.

The above language was cited and approved in Eason v. Rose, 183 Va. 359, 32 S.E.2d 66.

In Town of Vinton v. City of Roanoke, supra, the Town held a contract with the Vinton Water Company by which the Water Company was required to furnish water to the Town at a specified price "as long as [Town] shall require the same to be furnished, to be paid monthly." The Town had a right to discontinue the use of the water upon six months written notice. Thereafter the City of Roanoke acquired the holdings of the Water Company and notified the Town it would not abide by the contract. In holding such contract "was not perpetual," the Court said [80 S.E.2d 608, 616]:

* * * It was a covenant to sell an undetermined quantity of water at a fixed price for an indefinite period. It was subject to release at the will of the town at any time upon six months' notice. The words "as long as" convey a meaning of "temporarily," that is "for such a time." The word "perpetual" is defined in Webster's New International Dictionary, 2d Ed., as meaning "time without end," its usual meaning in ordinary and common acceptation.

* * * * * *

Here, the covenant under review lacks mutuality of promises, in that it purports to bind Vinton-Roanoke Water Company to furnish all water necessary to supply the demands of the town, but does not bind the town to take any amount of water.

"The general rule of law is * * * that, where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound, or neither is bound." American Agricultural Chemical Co. v. Kennedy, 103 Va. 171, 176, 48 S.E. 868, 870.

In Incorporated Town of Laurens v. Northern Iowa Gas & Elec. Co., 8 Cir., 282 F. 432, 435, where the facts are somewhat similar to those in the case at bar, the court said that "Fundamentally, an executory agreement for the sale and delivery of goods or supplies, to be effective, must be obligatory on both parties, or it lacks mutuality and is not enforceable."

### III.

The background of the lease demonstrates the parties did not intend the lease to be perpetual. The reason for the renewal provision was the inability of lessee to enter a lease for a longer period of time than one year. To further illustrate, lessee wanted the right to cancel the lease at any time on 30 days notice. By the terms of the lease, lessee could give notice to renew,[1] and before the new term began, it could cancel the lease. The language of the lease is not that used in one intended to be perpetual. The following cases are illustrative of the issue:

(a) Geyer v. Lietzan, supra, involved a lease for a two year period, with the right at lessee's option "of renewing this lease with and under all the terms and conditions thereof, successively" upon giving written notice 30 days "before the expiration of any two year period of this lease, or any successive renewals * * * and that upon the 3rd or any subsequent renewal the lessor may * * * increase the annual rental * * *." In holding such language did not constitute a lease in perpetuity, the Court said:

> It must be conceded that the foregoing language, in isolation, would be strongly indicative of an intention to confer upon the lessee the right to renew the lease indefinitely. We note, however, that the original term and the renewals are for two-year periods only and the lease, with the exception of the provision for successive renewals, contains covenants that usually appear only in short term leases. Nowhere in the instrument do we find any of the appropriate and apt words ordinarily used to create a perpetual lease, such as "forever," "for all time," "in perpetuity," etc. We cannot agree that the giving of the right to "successive renewals" means that such renewals are available to the appellant forever and without end. The

word "successive" imports concatenation. It does not define duration.

\* \* \* \* \* \*

We conclude, from an examination and consideration of all of the provisions of the lease contract, that it does not so clearly provide for perpetual renewals as to leave no doubt that such was the purpose and intention of the parties.

\* \* \* \* \* \*

We have held that the lease does not confer the right to perpetual renewals, if, in fact, the lease does extend to the lessee the right to more than one renewal but less than the right to renew in perpetuity, the number of renewals to which the lessee would be entitled is not spelled out by the lease. The lease would, therefore, be so indefinite and uncertain in that regard that the provision would be unenforceable. 51 C.J.S. Landlord and Tenant § 56b, p. 596; 32 Am.Jur., Landlord and Tenant, § 958, p. 806. Abeel v. Radcliff, 1816, 13 Johns.N.Y., 297, 7 Am.Dec. 377; Anderson et al. v. Hall, et ux., 1930, 155 S.C. 320, 152 S.E. 521.

(b) Buckland v. Tarble, 95 Vt. 87, 112 A. 217, dealt with a lease for one year "with the right and privilege" to lessee "to renew this lease from year to year under the same terms and conditions herein stated" by paying the rent in advance. After the third renewal, lessor refused to extend. In holding the language used did not grant the right to perpetual renewals, the Court said:

> The established rule is that, where the provision for a renewal is in general terms, it is satisfied by a single renewal. Winslow v. Baltimore, etc., R.R. Co., 188 U.S. 646, 23 S.Ct. 443, 47 L.Ed. 635; 16 R.C.L. 888. And where the original lease contained a covenant for "future renewals," the court said the language was satisfied by holding that it gave the lessee the right to two renewals Syms v. New York, 105 N.Y. 153, 11 N.E. 369.

---

1. To renew, notice was required of such intention "at least" 30 days before the lease or any renewal expired.

In the present case the three renewals had were all with the co-operation of the landlords, by way of receiving the payments for rent and making no objection to the tenant's occupying the premises accordingly. This constituted a practical construction by the parties, showing that number of renewals to be within the scope of the optional right, which we follow. But we hold that thereby the language of the covenant granting the right to renew "from year to year" was satisfied, and that the tenant's holding over after the expiration of the term of the third renewal was without right.

(c) Tischner v. Rutledge, 35 Wash. 285, 77 P. 388, dealt with a lease for one year "with the privilege at the same rate and terms each year thereafter from year to year." There the Court said the lease contained "only covenants applicable to a short fixed term," and was of the opinion "that the lessee and his assigns became tenants from month to month after the expiration of the year mentioned in the lease."

(d) Hallock v. Kintzler, supra, dealt with language providing "this lease may be renewed from year to year at the same rental and at the option of the lessee" upon giving 30 days notice of intention to renew. In holding the language did not establish a perpetual lease, it was said:

In attempting to construe this provision of the lease it is necessary to keep in mind the fundamental rule that perpetual leases are not favored and that general covenants as to right of renewal are therefore usually limited to a single renewal unless an intention to create a perpetuity is clearly shown.

\* \* \* \* \* \*

In the instant case the lease for the storeroom in the plaintiff's building is "for the term of one year" at a total rental of $420 with a general option for renewal "from year to year." This limited language hardly can be said to indicate clearly and unambiguously an intention and purpose to create a right to perpetual renewal of the lease for the room.

(e) King v. Wilson, 98 Va. 259, 35 S. E. 727, dealt with a lease for one year or ten years with a provision "renewable, or pay for the improvements at their valuation." At the time of contest the lessee had been in possession beyond the 10 year period, and beyond a 10 year renewal period. The Court stated:

It is well settled that a general covenant for renewal, such as the one in question, does not imply a perpetual renewal. The most a lessor is bound to give on such a covenant is a renewal for one term only. A different construction would virtually lead to a grant in perpetuity. Tayl. Lanl. & Ten. (7th Ed.) § 333; Syms v. Mayor, etc., 105 N.Y. 153, 11 N.E. 369; Peirce v. Grice, 92 Va. 763, 24 S.E. 392.

(f) Lawson v. West Virginia Newspaper Pub. Co., 126 W.Va. 470, 29 S.E.2d 3, quoted from Thaw v. Gaffney, 75 W.Va. 229, 83 S.E. 983, 3 A.L.R. 495, the following language, which it approved:

"Courts do not favor perpetual leases, and therefore covenants to renew are generally limited to a single renewal, unless the language is so plain as to admit of no doubt of the purpose to provide for a perpetual renewal \* \* \*."

(g) See also Kalicki v. Bell, 83 N.J. Super. 139, 199 A.2d 58; Brower v. Glen Wild Lake Co., 86 N.J.Super. 341, 206 A.2d 899; Hutson v. Knabb, 212 So.2d 362 (Fla.App.)

A general covenant for renewal such as the one used in the lease in question does not imply a perpetual renewal. The use of the language in the lease before the Court asserting the "lease may, at the option of the Lessee, be renewed from year to year" provided 30 days written notice is given "to Lessor," under all of the terms of the lease, does not constitute language sufficient to constitute a lease in perpetuity. It constitutes tenancy from year to year which

may be terminated by either party giving notice.

Lessee has used the premises for 18 years. During this time the rent has remained constant, although the property is located in a fast growing and booming area. At the time of the lease, the premises were located in Princess Anne County, adjacent to the ocean front and adjoining the Town of Virginia Beach. At that time the population of the County and Town was 42,277. Since that time, some 13 square miles of the County and 30 to 35 thousand population have been annexed by Norfolk City, the Town of Virginia Beach became a city, and Princess Anne County and the City of Virginia Beach merged to form the greater City of Virginia Beach, with a population of 166,066 in 1970. It is clearly apparent that the availability of land on or near the ocean is limited, and in demand. Real estate taxes have increased substantially. The value of the property covered by the lease is several times greater than it was in 1952. The value of the dollar has depreciated. This opinion is not, and should not, be founded on such facts. These facts point out some of the reasons courts are reluctant to declare leases perpetual where the language of the lease does not clearly show the parties intended perpetuity.

The lease is therefore declared to be a lease from year to year terminable by either party giving the required notice.